Christopher J. Hamner, Esq. (SBN 197117)
Amy T. Wootton, Esq.  (SBN 188856)
Anthony J. Nunes, Esq. (SBN 290224)
**HAMNER LAW OFFICES, APC**
555 W. 5th Street, 31st Floor
Los Angeles, California 90013
Telephone: (213) 533-4160
Facsimile: (213) 533-4167
chamner@hamnerlaw.com
awootton@hamnerlaw.com
tnunes@hamnerlaw.com

Attorneys for Plaintiff JOHN KIKANO, on behalf of himself and all others similarly situated

## UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – CENTRAL DISTRICT

| JOHN KIKANO, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff<br><br>                    vs.<br><br>UBER TECHNOLOGIES, INC., a Delaware corporation; XCHANGE LEASING, LLC; a California corporation; UFS INC., a California corporation; BAMA LEASING, INC., a Pennsylvania corporation,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **FALSE ADVERTISING (Cal. Bus. and Prof., §17500 et seq.)**<br>2. **FALSE ADVERTISING (UCC 2A-712)**<br>3. **FRAUDULENT INDUCEMENT**<br>4. **BREACH OF CONTRACT**<br>5. **RECISSION OF CONTRACT**<br>6. **BREACH OF THE IMPLIED DUTY OF GOOD FAITH DEALING**<br>7. **VIOLATION OF THE TRUTH IN LENDING ACT (15 U.S.C. §1601)**<br>8. **VIOLATON OF THE CONSUMER LENDING ACT (15 U.S.C. §1667)**<br>9. **RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT OF 1970 (16 U.S.C. §1961.)**<br>10. **UNFAIR BUSINESS PRACTICES (Cal. Bus. and Prof., §17200 et seq.)**<br>11. **INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

# I.

## INTRODUCTION

1.      In July 2015, Uber Technologies, Inc. ("Uber"), the well-known ride sharing company, established Uber Xchange to market and sell automotive leases to Uber drivers.

2.      Uber Xchange subcontracts with various auto lease brokers throughout the country such as BAMA Leasing, to lease vehicles to Uber drivers for Uber and Uber Xchange's benefit.  Uber and Uber Xchange are the intended third-party beneficiaries of all Uber leases with Uber drivers.

3.      Uber and Uber Xchange advertise and market Uber Xchange leases as having "no mileage cap."

4.      Unfortunately for many Uber drivers, what was advertised and marketed by Defendant is not true.  Uber Xchange auto leases do contain mileage limits.  Uber and Uber Xchange advertisements and auto leases do not clearly disclose, and in fact intentionally omit, that Uber drivers will be charged for exceeding mileage caps on Uber Xchange leases, and that these charges will deducted weekly from the Uber drivers' pay.

5.      Defendants being marketed and advertised to drivers that Uber and Uber Xchange auto leases contain "no mileage cap," Plaintiff and the class he seeks to represent were placed into auto leases which contain mileage caps, and provide for excess mileage penalties to be deducted from Uber drivers' weekly pay.

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

6.    For example, Uber and Uber Xchange advertising and marketing materials sent to Plaintiff and other Uber drivers stated:

**GET BEHIND THE WHEEL FOR $250, INTRODUCING EASY AND AFFORDABLE LEASING DESIGNED FOR UBER PARTNERS.  ALL CREDIT LEVELS WELCOME TO APPLY. NO MILEAGE CAPS.**

7.    Plaintiff seeks, on behalf of himself and the class he seeks to represent, false advertisement damages, fraud damages, breach of contract damages, statutory unfair lending damages, and the right to fully rescind these Uber Xchange auto lease.

8.    Plaintiff also seeks an injunction to prevent Defendants from continuing to market and sell auto leases to Uber drivers which contain, are coupled with, or are based on the promise of "no mileage caps," only to thereafter place Uber drivers into auto leases with Defendants which contain excess mileage penalties, and provide for these mileage penalties to be deducted from the Uber driver's weekly pay.

**II.**

**PARTIES**

**Plaintiff**

9.    Plaintiff John Kikano is a former Uber driver in Los Angeles, California. Plaintiff began driving for Uber in July of 2016.  Shortly after he began driving for Uber, Plaintiff received multiple advertisements and direct marketing emails from Uber and Uber Xchange which promised auto leases for Uber drivers with "no mileage caps."

10.    Despite the promised of "no mileage caps," Plaintiff's lease with Defendant did provide for a miles cap.  Plaintiff alleges his auto lease with Defendants

was ambiguous and did not fully or reasonably explain this to Plaintiff and the class he seeks to represent.  Only after Plaintiff executed his auto lease with Defendants did Plaintiff learn the he was being as charged $0.15 per mile for each mile over 2,500 per month, with a maximum monthly charge of $400 deducted by Uber from his pay.

11.    On February 2, 2016, Plaintiff was deactivated.  Despite this, Plaintiff has kept the vehicle, and continues to make payments on his lease directly to BAMA. Plaintiff does not use his car for commercial Uber driving.

12.    At the time of his deactivation, Plaintiff had an excellent 4.85 out of 5 rating as an Uber driver.

**Defendants**

13.    Uber Technologies, Inc., is a Delaware corporation, aka ("Uber,") which owns and operates the Uber ride sharing service.

14.    Xchange Leasing, LLC, a California corporation.  UFS, Inc., is a California corporation.  Xchange Leasing, LLC, and UFS, Inc. are collectively referred to herein as "Uber Xchange."

15.    In early 2015, Defendants Uber and Uber Xchange received a $1 billion loan from Goldman Sachs and other financial institutions to underwrite the Uber Xchange car leasing program.  Plaintiff and class he seeks to represent participated in this program.

16.    Plaintiff alleges on information and belief that the group of financial institutions which contributed to the $1 Billion dollar underwriting loan made to Uber and Uber Xchange to underwrite Uber Xchange auto loans includes, but not limited to,

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

Goldman Sachs, Citigroup, Deutsche Bank AG, JP Morgan, Morgan Stanley, and Sun Trust.

17.     BAMA Leasing, Inc., a Pennsylvania corporation, is also known as BAMA Commercial Leasing ("BAMA"), and is an automotive lease finance company which partners with Uber Xchange or Defendants' other auto lease program with Uber drivers.

18.     Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent and joint enterprises of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.

19.     Plaintiff is informed and believes and thereon alleges that at all times relevant to this action, the named Defendant and Defendants DOES 1 through 10 were affiliated and were an integrated enterprise.

20.     Plaintiff is informed and believes and thereon alleges that, at all relevant times, each defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

21.    Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants; and that each Defendant acted pursuant to a conspiracy and agreement to do the things alleged herein.

22.    Plaintiff is unaware of the true names, capacities, relationships, and extent of participation in the conduct alleged herein, of the Defendants sued as DOES 1 through 10, but is informed and believes, and based thereon alleges, that said Defendants are legally responsible for the wrongful conduct alleged herein, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this complaint when their true names and capabilities are ascertained.

## III.

## FACTS

### A.  False Advertising

23.    In July of 2015, Plaintiff received an email advertisement from Uber advertising its auto lease program for Uber drivers.  This advertisement states Uber Xchange auto leases have "no mileage caps."

/ / /

/ / /

/ / /

/ / /

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

## FLEXIBLE FINANCING FOR FLEXIBLE EARNINGS

Hello John,

Need a new car or thinking about an upgrade? Introducing Xchange Leasing, a new lease program designed just for Uber partners, now available with flexible, affordable options to help you get on the road quickly.

### New Lease Program Overview

- No mileage caps - drive as much as you'd like.
- Only $250 deposit. See sample lease terms here.
- Toyota Camry, Toyota Prius, Nissan Altima, Honda Civic, and more.
- Maximum amount financed up to $20,000, subject to change.
- Model year 2010 and newer with 60,000 miles or less.
- Maintenance included: oil changes, tire rotation, cabin air filter replacement.
- 36 month lease with the flexibility to return the vehicle after 30 days with two-week notice and $250 disposition fee.
- Easy payments deducted from your weekly earnings from driving on the Uber platform. All credit levels eligible to apply.

Ready to get started? Follow the the steps below to apply and get your decision fast.

19

20

21

        24.    At the same time, Uber and Uber Xchange also marketed through direct email to Uber drivers and displayed on their website a "sample lease" which provided no miles cap.

22

23

24

        25.    On August 28, 2015, Plaintiff entered into an auto lease with Uber Xchange, through Uber Xchange's third party broker, BAMA commercial leasing LLC.

25

26

27

28

        26.    Plaintiff, in reasonable reliance on Defendant's email advertising and "sample lease," entered into an auto lease with Defendants for a 2015 Toyota Prius.

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

27.     In the third month of the lease, Plaintiff was charged a $400 mileage penalty.  Plaintiff emailed and called BAMA and Uber Xchange to question the deductions from his Uber pay.

28.     On December 4, 2016, in response to Plaintiff's inquiries about his mileage cap, BAMA sent Plaintiff BAMA's "frequently asked questions", which for the first time, explained in detail Plaintiff's mileage cap.  The specifics regarding the Plaintiff's mileage cap were never disclosed in Defendants' advertising or marketing materials, or in the Uber Xchange's "sample lease" directed towards Plaintiff and other Uber drivers.  The specifics regarding the mileage cap were not set forth in any detail, if at all, in Plaintiff's lease with defendants.

29.     Plaintiff reasonably relied on Defendants' representations and omissions regarding the mileage cap, and did not have a full understanding that he indeed did have a mileage cap until after he had executed his auto lease with Defendants.

30.     There is no mention in Plaintiff's auto lease with Defendants that Uber is authorized to deduct excesses mileage penalties from Plaintiff's weekly pay.

31.     Plaintiff's auto lease provides in pertinent part:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

[011340032015081051]



## CALIFORNIA COMMERCIAL VEHICLE LEASE AGREEMENT
### WEEKLY PAYMENT LEASE

LESSEE"S INITIALS___
Page 1 of 7

Lease Date:    **August 28, 2015**

Lessor:    **BAMA Commercial Leasing, LLC**         Lessee(s):    **JOHN KIKANO**
1500 Sycamore Rd, Suite 200
Montoursville, PA 17754

These disclosures are made in connection with and are part of a commercial purpose closed-end vehicle lease dated **August 28, 2015** entered into between Lessor and Lessee

### LEASE DISCLOSURES

| Amount Due at Lease Signing or Delivery | Weekly Payments | Other Charges (Not part of your weekly payment) | | Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|---|
| (Itemized below)* | Your first weekly payment of **$160.27** is due on **09/11/15** followed by 155 payments of **$160.27** due on **Friday** of each week. The total of your scheduled weekly payments is **$25,002.12** | Disposition fee (If you do not purchase the Vehicle) | $0.00 | |
| $0.00 | | | $0.00 | |
| | | | $0.00 | $24,841.85 |
| | | Total | $0.00 | |

---

*Itemization of Amount Due at Lease Signing or Delivery

| A. Amount due at signing or delivery: | | | | B. How the amount due at lease signing or delivery will be paid: | |
|---|---|---|---|---|---|
| 1. Capitalization Cost Reduction | $2,374.25 | 7. Other: _____ | $0.00 | 1. Net trade-in allowance | $0.00 |
| 2. Sales Tax on Cash Down Payment | $0.00 | 8. Title Fees | $37.75 | 2. Rebates and non-cash credits | $2,750.00 |
| 3. Sales/Use Tax | $0.00 | 9. Registration Fees | $258.00 | 3. Amount to be paid in cash | $0.00 |
| 4. Opt-in Insurance Fee | $0.00 | 10. Doc Fees | $80.00 | | |
| 5. First Weekly Payment | $0.00 | | | | |
| 6. Prepaid Rental Payment | $0.00 | Total | 2,750.00 | Total | 2,750.00 |

---

C. Your weekly payment is determined as shown below

| | | | |
|---|---|---|---|
| **1. Gross capitalized cost.** The agreed upon value of the Vehicle ($24,155.03 ) and any items you pay over the lease term (such as a documentation fee or a lease acquisition fee). | $26,154.03 | **6. Rent charge.** The amount charged in addition to the depreciation and any amortized amounts. | $9,958.34 |
| **2. Capitalized cost reduction.** The amount of any net Trade-in allowance, rebate, non-cash credit or cash you pay that reduces the gross capitalized cost. | $2,374.25 | **7. Total base weekly payment.** The depreciation and any amortized amounts plus the rent charge. | $22,938.24 |
| **3. Adjusted capitalized cost.** The amount used in calculating your base weekly payment. | $23,779.78 | **8. Lease payments.** The number of payments in your Lease. (This is also the number of weeks in your Lease) | 156 |
| **4. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your base weekly payment. | $10,799.88 | 9. Base Weekly Payment: | $147.04 |
| | | 10. Weekly sales/use tax: | $13.23e |
| | | 11. Total weekly payment: | $160.27e |
| **5. Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value from normal wear and tear and for other items paid over the Lease term. | $12,979.90 | | |

---

**EARLY TERMINATION.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 2,500 miles per month at the rate of **$0.15** per mile.

**Purchase Option at End of Lease Term.** You have the option to purchase the Vehicle at the end of the Lease term for **$10,799.88** , plus a purchase option fee of **$250.00.** The purchase option price does not include official fees such as those for taxes, tags, license and registration.

**Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS COMMERCIAL PURPOSE LEASE WE MAY RETAKE THE VEHICLE.

CALIFORNIA                    BAMA COMMERCIAL LEASING, LLC COPY                    HC# 4816-1023-0562

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

# COMMERCIAL CLOSED-END MOTOR VEHICLE LEASE
## WEEKLY PAYMENT LEASE

LESSEE"S INITIALS JK

Lease Date: **August 28, 2015**

Page 2 of 7

Lessor:    **BAMA Commercial Leasing, LLC**          Lessee(s):    **JOHN KIKANO**

**1.  Parties and Agreement to Lease**

| Lessor Name, Business Address and Phone Number | Lessee(s) Name(s) and Business & Personal Address (es) |
|---|---|
| **BAMA Commercial Leasing, LLC**<br>1500 Sycamore Rd, Suite 200<br>Montoursville, PA 17754 | **JOHN KIKANO**<br><br>County: N/A |

"You" means the Lessee(s) named above. "We" means the Lessor named above. We intend to assign this Lease to the Assignee named at the end of this lease. Before assignment, any reference in this Lease to "we," "us" or "Lessor" means the Lessor named above. However, both we and the Assignee named at the end of this lease are considered "Lessors." Except for this disclosure, the Assignee named above has no rights or obligations as a Lessor until it is assigned. Then, any reference to "we," "us" or "Lessor" means the Assignee. All signers of this Lease are individually liable to us for all Lease obligations. You are leasing the Vehicle described below ("Vehicle") from us. You agree to fulfill all your payment and other obligations under the Lease. You intend to use the Vehicle primarily for commercial purposes. In this Lease, "e" means an estimate.

**2.  Vehicle Description**

| Used | Year | Make | Model / # of Cylinders | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|---|
| [ ] | 2015 | **TOYOTA** | **PRIUS** | **LIFTBACK 5** | | 5 |

Equipped With:

**3.  Lease Payment Terms**

You agree to pay us a Total Payment of **$24,841.85** as follows:

Upon Lease Signing or Delivery you will pay by the payment method(s) described in Section B above a total of **$0.00** which is the sum of any amounts itemized in Section A which, if itemized, includes your first Weekly Payment of **$160.27** and other amounts totaling **$0.00**, followed by 155 weekly payments due on **Friday** of each week.

You may also be charged for excessive wear based on our standards for normal use and mileage in excess of **2,500** miles per month at the rate of **$0.15** per mile.

**4.  Itemization of Gross Capitalized Cost**

| Agreed upon value of the Vehicle | Sales Tax (Including Luxury Tax) | Acquisition Fee | Doc Fees | Total Fees | Other: _____ |
|---|---|---|---|---|---|
| $24,155.03 | $0.00 | $1,999.00 | $80.00 | $295.75 | $0.00 |

**5.  Warranties.**    If the Vehicle is new, the Vehicle is subject to the manufacturer's standard new car warranty.  Warranty papers separate from this Lease state any coverage limits. If the Vehicle is not new, there is no express warranty on the Vehicle. The law gives you a warranty that the Vehicle conforms to the description in this Lease. Except as provided above or prohibited by law, the following three sentences apply. YOU ARE LEASING THE VEHICLE "AS IS" AND "WITH ALL FAULTS" AND THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE VEHICLE IS WITH YOU.  SHOULD THE VEHICLE PROVE DEFECTIVE FOLLOWING DELIVERY PURSUANT TO THIS LEASE, YOU, NOT THE LESSOR, ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING OR REPAIR. If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we enter into a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the warranty or service contract.   This provision does not affect any warranties covering the Vehicle that the manufacturer may provide.

**6.  Fees and Charges**

Official Fees and Taxes.  The total amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your weekly payment or assessed otherwise: $2,875.63e.  The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.  You will also pay a California tire fee in the amount of $8.75.

Document Processing Charge.  You will pay $80.00 for the Lessor's preparation and processing of documents, disclosures, and titling, registration, and information security obligations imposed upon Lessor by state and federal law. The document processing charge is not a governmental fee.

Electronic Vehicle Registration or Transfer Charge.  You will pay $29.00 an electronic filing charge which does not exceed the actual amount the Lessor is charged by its service provider for providing license plate processing, postage, and the related fees and services. The document processing charge is not a governmental fee.

Lease Acquisition Fee.  You will a lease acquisition fee in the amount of $1,999.00.

Disposition Fee:  If you do not buy the Vehicle under your purchase option, you will return the Vehicle to us at the end of the Lease term in clean condition to a place we designate, give us a completed, signed odometer disclosure statement and pay us any unpaid sums you owe under the Lease.  If you keep the Vehicle after you are required to return it, you will pay us a weekly amount equal to the total weekly payment and other amounts that may come due, but your payment does not permit you to keep the Vehicle unless you get our permission in advance.  You will pay us upon return of the Vehicle the disposition fee shown here.  We may apply all or part of your security deposit to your obligations.

CALIFORNIA                          BAMA COMMERCIAL LEASING, LLC COPY                          HC# 4816-1023-0562

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

32.   Plaintiff alleges that Uber and/or Uber Xchange are the third-party beneficiary in all of Plaintiff's leases with BAMA Leasing.

33.   Plaintiff's lease mandates that the vehicle must be driven for a commercial purpose more than 50% of the time, <u>but</u> also mandates that all commercial passenger driving of the vehicle may only be for Uber only.

34.   Uber Xchange provided insufficient disclosures, and in some instances, no disclosures at all, to Uber drivers regarding the existence of a mileage cap in the Defendant's auto leases with Uber drivers that excess mile penalties would be taken out weekly from Plaintiff's pay.  These terms were not disclosed by Defendants to Plaintiff or the proposed class in any print or internet advertising, or in the "sample lease."

35.   Plaintiff alleges that when read together, Defendants' online advertising and marketing, including the "sample lease," could and did in fact lead to reasonable and detrimental reliance that the actual lease agreement, like the majority of auto lease agreements, included no mileage cap, and provided for weekly deductions form driver's pay for these excess mileage charges.

### IV.

### CLASS ALLEGATIONS

36.   Pursuant to Federal Rules of Civil Procedure Rule 23, Plaintiff seeks to represent the rights of the following subclasses of Uber drivers:

**1.   <u>Miles Cap Subclass</u>**

All Uber drivers in the United States who, in the last four years entered into an auto lease with, through or for Uber or Uber Xchange, and who were assessed a weekly mileage penalty during the term of the lease.

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

### 2.   <u>False Advertising Subclass</u>

All Uber drivers in the United States who in the last four years entered into an auto lease with, through or for Uber or Uber Xchange, after being sent a direct marketing email from Uber or Uber Xchange which stated Uber auto leases have "NO MILEAGE CAPS."

### 3.   <u>Breach of Contract Subclass</u>

All Uber drivers in the United States who in the last four years entered into an auto lease with, through or for Uber or Uber Xchange, and who seek breach of contract damages, fraud damages, excuse of performance, or a refund on their auto lease.

### 4.   <u>Rescission Subclass</u>

All Uber drivers in the United States who in the last four years entered into an auto lease with, through or for Uber or Uber Xchange, and who seek rescission of their auto lease.

37.    Plaintiff reserves the right to seek to amend or edit these subclass definitions.

38.    Plaintiff brings this cause of action on behalf of himself and on behalf of all persons similarly situated, as explained herein.

39.    There is a well-defined community of interest in the litigation and the class is ascertainable.

40.    The proposed class is so numerous that individual joinder of all members is impractical under the circumstances of this case.  While the exact number of class members is unknown to Plaintiff at this time, Plaintiff is informed and believes and thereon alleges that the classes consist of 10,000 persons or more.

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

41.     Common questions of law and fact exist as to all class members, and predominate over any questions that affect only individual members of the classes that Plaintiff seeks to represent.

42.     Plaintiff's claims are typical of the claims of the class.  Plaintiff and other class members sustained losses, injuries and damages arising out of the Defendants' common enterprise, and course of conduct referred to in each cause of action and throughout this complaint, which were applied uniformly to class members including Plaintiff.  Plaintiff seeks damages and recoveries for the same types of losses, injuries, and damages as were suffered by Plaintiff and others that Plaintiff seeks to represent.

43.     Plaintiff and his counsel will fairly and adequately protect the interests of the class.  Plaintiff has no interest that is adverse to the interests of the other class members.

44.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Also, because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class

action.  The cost to the court system and the public of adjudication of individual litigation and claims would be substantial, and substantially more than if the claims are treated as class action.  Individual litigation and claims would also present the potential for inconsistent or contradictory results.

**V.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**FALSE ADVERTISING (CAL. BUSINESS AND PROFESSIONS CODE §17500 *et seq.*)**

45.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

46.    California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

47.    Plaintiff and members of the classes were denied the benefit of the bargain when they decided to enter into auto leases with Defendants.

48.    Plaintiff alleges on information and belief that if he and other members of the proposed classes had been aware of Defendants' false and misleading advertising tactics, they would not have entered into auto leases with Defendants.

49.    Defendants created, disseminated, and/or caused to be disseminated the deceptive advertisements and marketing materials alleged herein.

/ / /

/ / /

14

50.     Defendants' advertisements regarding no mileage caps are false, deceptive, misleading, and fraudulent under the California Business and Professions Code section 17500 *et seq*.

51.     Defendants' deceptive practices were specifically designed to induce Plaintiff and the proposed classes of Uber drivers to enter into auto leases with Defendants.

52.     Plaintiff alleges Defendants knew, or should have known and failed to exercise of reasonable care, that representations to Plaintiff and the proposed classes that there were no mileage caps were untrue and misleading, and were likely to deceive reasonable auto lease consumers.

53.     On or about June 10, 2016, Plaintiff sent a CLRA violation notice to Uber Technologies, Inc. alleging that:

> "Uber and Uber Xchange are currently participating in an unfair, and illegal auto leasing program for Uber drivers which is misleading, predatory, fraudulent and otherwise completely unfair to Uber drivers."

> "Some details of the leasing program are never provided to Uber drivers..."

54.     Plaintiff has never received a response to this letter.

55.     Pursuant to California Civil Code section 17500 *et seq*, Plaintiff alleges he has standing to bring this false advertising action.

56.     Plaintiff has suffered actual damages, such as loss of property and other economic injury.

57.     Plaintiff alleges the aforementioned damages for false advertisement were directly and proximately caused by the unfair business practices alleged herein.

58.     Plaintiff alleges the gravamen of his injuries are due to Defendants' false advertising.

59.     Plaintiff alleges that the false advertising claims made in this case, and in particular, the material misrepresentation and omissions involved with Defendant's advertising and marketing, of its auto lease program to it drivers directly and proximately led to the false advertising damages suffered by Plaintiff and the classes he seeks to represent.

## SECOND CAUSE OF ACTION

## MISREPRESENTATION AND FRAUD (UCC 2A-712)

60.     Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

61.     Defendants breached the lease contract with Plaintiff by, among other things, mispresenting and omitting material facts about the auto leases Defendants marketed and sold to Uber drivers, mainly that there were no mileage caps, when Plaintiff and the classes he seeks to represents were charged monthly penalties for driving excess miles.

UCC 2A-712 provides that:

> Remedies for material misrepresentation or fraud include all remedies available under this Article for non-fraudulent breach.  Rescission or a claim for rescission of a lease contract or rejection or return of the goods does not bar and is not inconsistent with a claim for damages or other remedy.

62.     Plaintiff alleges Defendant's fraudulent and misleading internet advertisement and direct emails violated UCC Article 2 sections 605, 704, 705, 706, 707, 709, 710, and 712.

63.     Plaintiff alleges that Defendants intentionally misled Plaintiff and the classes he seeks to represent by promising no mileage caps in Defendant's lease advertisements.

64.     Plaintiff and the classes he seeks to represent reasonably relied upon these advertisements and entered into auto leases which included mileage caps.  Plaintiff alleges that his auto lease with Defendants is intentionally unclear regarding mileage caps.

65.     Plaintiff alleges this is known as a "bait and switch" tactic and constitutes misrepresentation and fraud, allowing Plaintiff to seek damages on behalf of himself and the classes of Uber drivers he seeks to represent.

## THIRD CAUSE OF ACTION

## FRAUDULENT INDUCEMENT

66.     Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

67.     Plaintiff alleges that he and thousands of other Uber drivers were fraudulently induced by Uber and Uber Xchange entering auto leases which contained mileage limits which also provided for deduction for mileage penalties from Uber drivers' weekly paychecks.

68.    Uber and Uber Xchange, through direct marketing and by a "sample contract," misrepresented their program to Plaintiff. Uber also misrepresented its lease program to various media and blog websites who were reporting on the lease program, and who re-printed these false "no mileage cap" claims by Uber in news stories and blogs. Plaintiff and the classes he seeks to represent reasonable relied on these advertisements.

69.    Prior to entering the lease, Defendants expressly and consistently represented to Plaintiff that its auto lease program featured "no mileage cap."

70.    In December of 2015, Plaintiff contacted Uber Xchange and BAMA regarding the weekly mileage penalties he was being charged by Defendants. In response to Plaintiff's emails to BAMA, BAMA provided Plaintiff with a document titled "Welcome to BAMA Commercial Leasing." This document included the following Frequently Asked Questions:

Q. What happens if I drive more than 2,500 miles per month? And how does BCL know if I go over my monthly mileage?

A: Your vehicle automatically reports mileage to us each month. We reconcile the mileage at the end of each calendar month and any mileage overages will be charged the following month. Excessive mileage charges greater than $50 will be equally split and added to the weekly payments of the next month. According to our policy we pro-rate at 82.2 miles per day for the first partial month of the lease; if you do not drive over the allotted miles, they will roll over to future months. If you do drive more than the 2500 miles you will be charged a $0.15 per miles for each mile over that limit.

71.    This Frequently Asked Questions answer correctly explains the mileage restrictions which Defendants were processing against Plaintiff's Uber pay account.

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

However, this was the first time this disclosure was ever made to Plaintiff. At no time during the leasing process was Plaintiff ever informed by any of the Defendants that he was subject to a mileage penalty which would be deducted weekly from his Uber pay. Most disturbing, the auto lease Plaintiff entered into does not disclose the details of this term sufficiently.

72.    While the FAQ sent to Plaintiff in December of 2015 is extremely clear, the term in Plaintiff's executed lease with BAMA is not:

> "Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use and for mileages in excess of 2,500 miles per month at the rate $0.15 per mile," and who were charged any 'excessive wear' or other miles overage fee on a monthly basis during the term of the lease."

73.    Plaintiff alleges he was never informed of the specifics of the weekly mileage penalty, or the calculation of this weekly mileage penalty, until after auto lease has been entered into and the Uber driver is assessed a weekly mileage penalty.

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT

74.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

75.    Plaintiff alleges that Defendants first breached their promise to Plaintiff and the classes he seeks to represent by promising no mileage caps in Defendants' false advertisements, causing Plaintiff and the classes he seeks to represent to reasonably rely on this promise, and agree to enter into auto leases which in fact did involve mileage caps. Plaintiff alleges that his lease is intentionally unclear regarding the mileage

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

caps. Plaintiff alleges that it is only after the lease is entered into that Defendants explain in reasonable detail that there is a mileage cap in the lease, how the lease is calculated and when how the mileage penalty is due.  Plaintiff alleges this is a "bait and switch" and constitutes a breach of the lease, allowing Plaintiff to seek, on behalf of himself and the other the proposed classes of Uber drivers, contract and fraud damages.

76.    Plaintiff alleges that nowhere in his lease with Defendants does it state that penalties for excess miles will be deducted from Plaintiff's weekly Uber pay. Defendants' deduction from Plaintiff's weekly pay of weekly mileage overage fee is a material breach of the terms of Plaintiff's lease.  Plaintiff alleges on information and belief that this language is contained in many more auto leases between Defendants and other Uber drivers.

77.    The breaches of Plaintiff's lease and the proposed classes' leases in the same manner, have caused damages to Plaintiff and the classes he seeks to represent.

78.    Defendant failed to perform all promises, covenants, terms and conditions required of it under its lease program despite its express obligations and/or agreement to do so.

79.    As a result of Defendants' breach, Plaintiff and the classes he seeks to represent have suffered damages.

80.    Plaintiff seeks for himself and the classes he seeks to represent compensatory damages, general damages, refund, reimbursement, special damages, punitive damages, restitution, cancelation and excuse of performance of Plaintiff's and the proposed classes auto leases with Defendants.

**FIFTH CAUSE OF ACTION**

**RECISSION OF CONTRACT (Cal. Civil Code §1689)**

81.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

82.    Rescission of a contract may be ordered by the court as an equitable remedy.  The remedy of rescission is intended to bring the parties as close to the same position they were in before they entered into the contract as possible.

83.    Contract rescission requires that all parties give back any benefits they have received while the contract was in force, and be returned to their original states, as though the contract had never been formed in the first place.

84.    Plaintiff alleges Defendants' actual fraud and false advertising alleged herein constitute sufficient ground for rescission of these Uber Xchange auto leases.

85.    Plaintiff seeks to fully rescind his Uber and Uber Xchange auto lease with Defendants, and seeks the same remedy for the proposed class.

**SIXTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

86.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

87.    Defendants breached an implied covenant of good faith and fair dealing by bait and switch false advertising tactics.

88.    As a result of Defendants' breach, Plaintiff and the classes have suffered damages, plus additional pre and post judgment interest according to law, and cost of

suit and attorneys' fees incurred by Plaintiff and the classes in pursuing this litigation, in

an amount according to proof at trial.

89.     Plaintiff is informed and believes, and based thereon allege, that

Defendants engaged in the aforementioned acts, and in ratifying such acts, engaged in

willful, malicious, intentional, oppressive and despicable conduct, and acted with

conscious and deliberate failure or refusal to discharge his contractual responsibilities

without proper cause, Plaintiff and the classes he seeks to represent is entitled to an

award of punitive and exemplary damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE TRUTH IN LENDING ACT (TILA) (15 USC §1601)**

90.     Plaintiff incorporates all previous paragraphs of this complaint as though

fully set forth herein.

91.     Plaintiff alleges, alternatively, on behalf of himself of the classes he seeks

to represent, that auto leases entered into by Uber drivers should not be treated as

commercial leases under TILA.  Plaintiff alleges that Uber auto leases such as the ones

marketed to Plaintiff and entered into between Plaintiff and Defendants should be

treated as consumer leases under 15 USC §1601 of TILA.

92.     Consumer leases must have the precise amount of every monthly payment

stated in the lease, and consumer leases can only provide for mileage overage charges to

be assessed at the end of the lease.  Defendants marketed, sold, and entered into leases

with Uber drivers, which did not comply with consumer protections contained in TILA.

93.      Plaintiff alleges on behalf of himself and the classes he seeks to represent, that Uber Xchange auto leases violate TILA by failing to unambiguously disclose all the material terms of the leases Plaintiff and the proposed classes entered into with Defendants.

94.      Uber should not be permitted to argue that these auto leases are for commercial use here, when Uber has recently presented the directly opposite position to the California Department of Motor Vehicles, and separately to the California Public Utilities Commission.  Uber has recently presented argument to each of these agencies that Uber drivers are not commercial drivers, should not have to register their vehicles as a commercial vehicle, should not have to purchase commercial insurance, and should not be subject to many of California's commercial driver rules and regulations.

95.      Plaintiff alleges that Uber does not treat its drivers as commercial drivers and cannot now argue that Uber drivers are commercial drivers.

96.      Plaintiff and other drivers deactivated from Uber still pay for their lease and have kept their vehicles.  These drivers cannot be considered commercial Uber drivers when Defendants know they are no longer using the vehicle for Uber driving.  In doing so, at the very least, Defendants have waived the provision of the lease which mandates that Plaintiff only use the car for commercial driving for Uber, and at most it is an admission by Defendants that these leases are not and cannot be exclusively for commercial driving for Uber.

97.      Uber advertising to potential drivers make it clear that working for Uber is way to use your personal car to generate income.  Uber markets itself as a ride sharing

platform where drivers are urged to start making "great money with your car" and to "get your side hustle on!"  This is inconsistent with a claim that these same Uber drivers are "commercial drivers."

98.    Under the California Vehicle Code, Uber drivers may not be commercial drivers.  (See California Commercial Vehicle Code sections 260, 233.)  California Vehicle Code section 260 defines a commercial vehicle as:

> (a) A "commercial vehicle" is a motor vehicle of a type required to be registered under this code used or maintained for the transportation of persons for hire, compensation, or profit or designed, used, or maintained primarily for the transportation of property.

> (b) Passenger vehicles and house cars that are not used for the transportation of persons for hire, compensation, or profit are not commercial vehicles.  This subdivision shall not apply to Chapter 4 (commencing with Section 6700) of Division 3.

> (c) Any vanpool vehicle is not a commercial vehicle.

99.    Plaintiff alleges that he and the classes he seeks to represent should be treated as consumers under TILA, and should be entitled to available damages based upon Defendant's breach of TILA.

100.    Plaintiff alleges Defendants are liable to Plaintiff and the classes he seeks

101.     to represent for actual damages, statutory damages, and attorneys' fees and costs.

/ / /

/ / /

/ / /

/ / /

24

## EIGHTH CAUSE OF ACTION

## VIOLATON OF THE CONSUMER LENDING ACT (CLA) (15 USC §1667)

102.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

103.    Defendants have failed to comply with 15 USC §1667d(a) of the Consumer Lending Act.

104.    Defendants are "lessors" under 15 USC §1667(3), and 12 CFR Part 213, Supp. L, Official Staff Commentary, section 213(h), comment 1.

105.    Plaintiff alleges that Plaintiff and the classes he seeks to represent are owed actual damages sustained as a result of the violation of this act, statutory damages in the amount of 25% of the total amount of the monthly payments under the lease, with a minimum liability of $100 and a maximum liability of $1,000 under 15 USC §1640(a)(2)(A)(ii).

106.    The leases alleged herein to be consumer auto leases are covered by the CLA because each auto lease is for more than 4 months and for less than $50,000.

107.    Under the CLA, Defendants must disclose the total amount of the payments to be made at the consummation of the lease.  Defendants did not do this in their auto leases with Uber drivers.

108.    Under the CLA, Defendants must disclose the total amount of any payments to be paid before or at the lease signing or delivery.  Defendants did not do this in their auto leases with Uber drivers.

109.    Under the CLA, Defendants must itemize each component of the amount due by the consumer before or when the lease is signed, by both type and amount. Defendants did not provide this itemization in their auto leases with Uber drivers.

110.    Under the CLA, Defendants must itemize how the amount due under the lease will be paid, by type and amount, including net payment allowance, rebates, noncash credits, and cash payments.  Defendants did not do this in their auto leases with Uber drivers.

111.    Under the CLA, Defendants were obligated to disclose the accurate number, amount, due dates, or periods of payments scheduled of every consumer lease.

112.    Under the CLA, Defendants are required to disclose the total amount of all other charges, individually itemized, payable by the lessee to the lessor, that are not included in the periodic payments.  This amount includes any liabilities that the lease imposes at the end of the term, but does not include the potential difference between the estimated and realized values of the leased property.  The total amount of the charges must be segregated from other information contained in the lease and must contain only directly related information.  Defendants' auto leases fail to provide this notice.

113.    The CLA mandates that wear and tear provisions in the lease must be disclosed.

114.    Plaintiff alleges Defendants are liable to Plaintiff and the classes he seeks to represent for actual damages, statutory damages, and attorneys' fees and costs.

/ / /

/ / /

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

## NINTH CAUSE OF ACTION

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT OF 1970 ("RICO") (16 USC §1961 *et seq.*)**

115.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

116.    Plaintiff alleges that Defendants' multiple internet advertisement and direct email advertisements directed to Plaintiff and the classes he seeks to represent comprise two or more predicate acts under RICO.

117.    Defendants acquired and maintained, directly an interest in and control of a RICO enterprise of individuals who were associated, and who did engaged in interstate and foreign commerce, in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

118.    Within the last four years, Defendants have jointly and severally committed two predicate acts that are itemized in 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b).

119.    Plaintiff alleges Defendants committed two or more of the offenses set forth herein in a manner which they calculated and premeditated intentionally to create a continuing threat of their respective racketeering activities in violation of 18 U.S.C. 1962(b).

120.    Plaintiff alleges Defendants derived and continue to derive income, either directly or indirectly, from the pattern of racketeering activity alleged herein. Defendants participated as a principal in the pattern of racketeering activity.

121.    Plaintiff alleges that the acts were related to one another and had the same or similar purposes, results, participants, victims, or methods, and also have related common distinguishing characteristics, and are not isolated events.

122.    Plaintiff alleges Defendants are an "enterprise" with a shared purpose, relationships among those associated with the enterprise, and a duration sufficient to permit those associates to pursue the enterprise's purpose.  This enterprise has a property interest that Defendants could and did acquire.

123.    Plaintiff alleges the enterprise alleged herein had an effect on interstate commerce.

124.    Plaintiff alleges Defendants are liable to Plaintiff and the classes he seeks to represent for actual damages, statutory damages, and attorneys' fees and costs.

## TENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES (BUS. &PROF. CODE §17200)

125.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

126.    Plaintiff brings this action on behalf of each and all members of the general public, including class members and Plaintiff himself, pursuant to Business and Professions Code sections 17200 *et seq.*  Defendants' conduct alleged above constitutes unlawful business acts and practices in violation of Business & Professions Code sections 17200 *et seq.* ("UCL").

127.    The unlawful and unfair business practices and acts of Defendant, described above, have injured Plaintiff and the classes he seeks to represent.

128.    Plaintiff and the classes he seeks to represent seek restitution and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

129.    Pursuant to Business and Professions Code sections 17200 *et seq.*, for the statute of limitations period covered by this cause of action, Plaintiff and the classes he seeks to represent are entitled to restitution for, at least, the unpaid overtime earnings and other unpaid earnings withheld and retained by Defendants referred to above.

130.    Plaintiff and the classes he seeks to represent and the general public are also entitled to permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct referred to above.

131.    WHEREFORE, Plaintiff and the classes he seeks to represent request relief as described herein and below.

## ELEVENTH CAUSE OF ACTION

## INJUNCTIVE RELIEF

132.    Plaintiff incorporates all previous paragraphs of this complaint as though fully set forth herein.

133.    Defendants' auto leasing marketing practices caused Plaintiff and other Uber drivers to suffer irreparable injury.

134.    If not enjoined by order of this Court, Uber will continue to engage in the unfair and illegal false advertising, fraud, and breach of contract that Defendant has engaged in with Plaintiff and the classes he seeks to represent.

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

135.    Plaintiff and the classes he seeks to represent do not have a plain, speedy, and adequate remedy in the ordinary course of law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the classes he seeks to represent, pray for relief as follows:

1. That the Court determine that this action may be maintained as a class action;

2. That Plaintiff be appointed the class representative;

3. That the attorneys of record for Plaintiff whose names appear in this complaint be appointed class counsel;

4. For such general and special damages as may be appropriate;

5. For waiting time penalties and civil penalties for all class members no longer in Defendants' employ at the time of Judgment;

6. For pre-judgment interest;

7. For permanent injunctive and declaratory relief described in the cause of action under Business & Professions Code § 17200 *et seq*. above;

8. A declaratory judgment that the practices complained of herein are unlawful under California state law;

9. Attorney's fees and costs of suit;

10. Rescission as pled herein; and

11. Such other injunctive and equitable relief as the Court may deem proper.

KIKANO V. UBER TECHNOLOGIES, INC. - COMPLAINT

1   DATED:  January 20, 2017              **HAMNER LAW OFFICES, APC.**

2

3

4                                         _____

5                                         By:  Christopher J. Hamner, Esq.
                                          Attorneys for Plaintiff, JOHN KIKANO, on
6                                         behalf of himself and all others similarly
                                          situated
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         31